IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION


**DONNA L. BEAVERS,**                                    Civil No. 10-1004-CL

        Plaintiff

       v.                                             **FINDINGS AND**
                                     **RECOMMENDATION**
**MICHAEL J. ASTRUE,**
Commissioner of Social Security

        Defendant.


CLARKE, Magistrate Judge:

       Plaintiff Donna Beavers ("Beavers") seeks judicial review of the Social Security

Commissioner's final decision finding her not disabled under Title II of the Social Security Act.

This court has jurisdiction under 42 U.S.C. § 405(g).  The Commissioner's decision should be

affirmed.

## BACKGROUND

       Born in 1962 (Tr. 83), Beavers completed two years of college.  Tr. 98.  She filed


1 - FINDINGS AND RECOMMENDATION

applications for DIB on July 26, 2005, alleging disability since May 7, 2004 (Tr. 83), due to chronic right side lumbar radiculopathy, migraine headaches, depression, anxiety, and panic attacks. Tr. 90. The Commissioner denied these applications initially and upon reconsideration. Tr. 67-77. An ALJ held a hearing on November 28, 2007 (Tr. 937-77), and subsequently found her not disabled on February 27, 2008. Tr. 20-34. The Appeals Council accepted additional evidence into the record, but denied review of the matter on June 25, 21010. Tr. 5-8.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 404.1520(e); Social

2 - FINDINGS AND RECOMMENDATION

Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(a)(4)(v); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 404.1566.

## THE ALJ'S FINDINGS

The ALJ found Beavers' back strain, depression, anxiety, and history of "overuse of opiates" "severe" at step two. Tr. 25. The ALJ found that these impairments did not meet or equal a listing at step three, and found that Beavers retained the RFC to perform light work, "except that she is also limited to change positions for a few minutes every hour; occasionally climb, balance, stoop, kneel, crouch, and crawl; and simple 1-2-3-step work." Tr. 28. The ALJ found that Beavers was unable to perform her past relevant work at step four (Tr. 32), but could perform work in the national

3 - FINDINGS AND RECOMMENDATION

economy at step five. Tr. 33. The ALJ therefore found Beavers not disabled. Tr. 34.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g);   *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).   The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## ANALYSIS

I.      **Credibility**

Beavers argues that the ALJ failed to adequately discredit her testimony.

A.      **Credibility Standards**

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or

4 - FINDINGS AND RECOMMENDATION

other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036, *citing Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995), *citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

## B.    Analysis

The ALJ found Beavers' symptom testimony not credible based upon her inconsistent symptom testimony, failure to follow treatment, work history, drug-seeking behavior, and medical record. Tr. 29-31. Beavers challenges the ALJ's analysis regarding her inconsistent statements, refusal of treatment, activities of daily living, opioid use, and medical record.

### 1.    Inconsistent Statements

The ALJ found that Beavers made inconsistent statements regarding her ability to sit, first stating that she could sit for ten minutes only, and later stating she could sit one to three hours. Tr. 29. Beavers argues that the ALJ may not rely upon a claimant's fluctuating symptoms in finding her

5 - FINDINGS AND RECOMMENDATION

statements inconsistent. Pl.'s Opening Br. 4. While the ALJ may consider inconsistent symptom reporting, *Smolen*, 80 F.3d at 1284, the ALJ must also consider that a claimant's activity may be sporadic if the claimant's condition is characterized by periods of exacerbation and remission. *Reddick*, 157 F.3d at 722. The record shows that Beavers initially reported in 2005 and 2006 that she was unable to sit or stand longer than fifteen to twenty minutes at a time. Tr. 90, 133. At her November 2007 hearing Beavers testified that she could sit for one to three hours, depending upon whether she was experiencing a "good" or "bad" day. Tr. 957-58. These statements suggest that Beavers' symptoms fluctuated. The ALJ's reasoning that these statements were merely inconsistent therefore should not be sustained.

The ALJ also found that Beavers inconsistently reported depression symptoms. Tr. 30. The ALJ found that Beavers reported depression on July 8, 2004, but shortly thereafter denied depression on July 30, 2004, and again denied depression on September 16, 2004. Tr. 30. Beavers does not challenge this analysis, and the record reflects this finding. Tr. 347, 265, 312. Beavers alleged disability in part due to depression (Tr. 90, 128) and the ALJ's finding that she denied depressive symptoms during the period under review is therefore relevant. The ALJ's findings on the matter should be sustained.

### 2.    Failure to Follow Treatment

The ALJ also found that Beavers failed to follow recommended treatment regarding counseling and antidepressant medication. Tr. 30. Specifically, the ALJ found that Beavers refused to take a prescribed antidepressant because she denied depressive symptoms, and did not attend recommended counseling. Tr. 30. Beavers now argues that the ALJ erroneously cited her refusal

6 - FINDINGS AND RECOMMENDATION

to take antidepressants, and that she "continued to take psychotropic medication through the day of her hearing." Pl.'s Opening Br. 6.

The ALJ's credibility analysis may cite a claimant's failure to follow treatment. *Smolen*, 80 F.3d at 1284. The record shows that Beavers declined both antidepressant medication (Tr. 331), and declined counseling. Tr. 337. While Beavers may now assert reasons for failing to follow these recommendations, when more than one reasonable interpretation of the record arises, this court must defer to the ALJ's interpretation of that evidence. *Rollins v. Massinari*, 261 F.3d 853, 859 (9th Cir. 2001). The ALJ's findings are based upon the record, and should therefore be affirmed.

### 3.    Activities of Daily Living

The ALJ's credibility analysis also cited Beavers' activities of daily living, specifically noting that she is reading and researching what she called the "cycle of abuse." Tr. 31. The ALJ found this activity inconsistent with Beavers' testimony that she cannot focus sufficiently to watch a movie. Tr. 31. Beavers does not address this finding, and it should therefore be affirmed.

Beavers instead argues that her activities are "consistent with her statements" that she experiences pain with minimal activity, spends much of her time in a "reclined position," and cannot leave her house alone. Pl.'s Opening Br. 7. The ALJ made no findings regarding these activities, and Beavers now asserts this is erroneous, although she does not explain the ALJ's alleged error. Beavers' indicated citation describes an ALJ's erroneous interpretation of a claimant's occupational therapy attendance, and the Ninth Circuit's condemnation of an ALJ's reliance upon a claimant's hearing demeanor in discrediting pain testimony. *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984). This authority does not establish that the ALJ was under an affirmative duty to discuss

7 - FINDINGS AND RECOMMENDATION

Beavers' activities of daily living.  Further, this court need not accept a claimant's interpretation of such activities. *Rollins*, 261 F.3d at 857.  For these reasons, Beavers fails to establish error regarding the ALJ's alleged omission of her daily activities.

### 4.    Opioid Use

Beavers now asserts at length that the ALJ misread the record pertaining to her narcotic use. Pl.'s Opening Br. 7-13.  The ALJ cited Beavers' drug-seeking behavior, noting that physicians changed her medication "to decrease her dependence on Endocet," and that in December 2004 she was simultaneously using Morphine and Oxycodone. Tr. 31.  The ALJ also noted that Beavers was assigned a diagnosis of narcotic and benzodiazepine abuse upon hospitalization in December 2006, and that August 2006 records show that Beavers was simultaneously obtaining narcotics from three different pharmacies. *Id.*  Finally, the ALJ noted that Beavers was denied opioids due to concerns regarding her drug seeking behavior and abuse. *Id.*

Beavers first aruges that her narcotics were prescribed and that her treating physicians did not suggest inappropriate medication use. Pl.'s Opening Br. 8.  The ALJ made no finding that Beavers was taking non-prescribed medications; Beavers therefore cannot establish error on the matter.  Contrary to Beavers' assertion, many treating physicians suggested she used her pain medications inappropriately; these instances are discussed below.

Beavers second allegation of error asserts that treating physician Dr. Reid notation regrading her Endocet dependence was made while "formulating a treatment plan," and did not state she was an "addict." Pl.'s Opening Br. 8.  The ALJ acknowledged that Dr. Reid made his statement in a clinical context. Tr. 31.  Beavers appears to argue that the ALJ's finding was factually correct, but

8 - FINDINGS AND RECOMMENDATION

that the ALJ incorrectly inferred that she had a dependence upon Endocet. The record shows that Dr. Reid wrote, "Due to [Beavers'] chronic pain and the length of this exacerbation, I think it is reasonable to start her on some long-acting opioids to decrease her dependence on Endocet." Tr. 266. A plain reading of this statement suggests that Dr. Reid believed Beavers was dependent upon Endocet. The ALJ's finding is therefore based upon the record and should not be disturbed.

Third, Beavers argues that the ALJ improperly "inferred that [Beavers] should not have been using both short- and long-acting medication." Pl.'s Opening Br. 8. The ALJ stated, in full, "In December 2004, it was noted that she had been using both long-acting Morphine and Oxycodone for her pain. Tr. 31. The ALJ's citation pertaining to December 2004 shows that a treating physician wrote:

> She has been using both long-acting morphine and oxycodone for her pain requiring increasing short-acting with flares. We discussed today the importance of trying to transition over to the long-acting and increasing the dose by 15 mg increments until she has reasonable pain during her active days, and try to minimize use of short-acting medications. Tr. 264.

The ALJ's citation on the matter is based upon the record. The ALJ made no specific finding or inference that this medication use itself was inappropriate at that time. Beavers' assertion to the contrary should be rejected.

Beavers' fourth argument asserts that the ALJ erroneously found that she was denied opioids due to concerns regarding drug-seeking behavior and medical abuse, specifically asserting that the ALJ erroneously cited the opinion of neurologist Ted Lowkenkopf, M.D., on the matter. Pl.'s Opening Br. 9. The ALJ first cited chart notes produced by treating physicians at Providence Hospital Faculty Practice, which clearly state, in capital letters, "no opioids: concern for drug seeking

9 - FINDINGS AND RECOMMENDATION

behavior," and also state, "Concern for drug-seeking behavior.  To date, we have not date [sic] prescribed controlled substances for this [patient] and we will be very careful about doing so in the future."  Tr. 573, 598.  Beavers does not challenge this reasoning and it should therefore be affirmed.

The ALJ subsequently cited Dr. Lowenkopf's September 5, 2007, report, which states, "question of medication abuse" regarding a further opioid prescription.  Tr. 570.  Beavers' submission that "not once did [Dr. Lowenkopf] mention 'drug seeking behavior' or in any way indicate that Plaintiff's use of her medication was inappropriate" is not based upon the record, and therefore fails.

Fifth, Beavers argues that the ALJ erroneously inferred that her July and August 2006 hospitalization notes suggested opiate abuse.  Pl.'s Opening Br. 9.  The ALJ cited the summer 2006 hospitalization regarding her multi-pharmacy use.  Tr. 31.  The record supports the ALJ's citation. An August 2, 2006, chart note by attending psychiatrist Muhamad Rifal, M.D., states:

> The social worker brought a piece of information that Ms. Beavers
> had been using three different pharmacies to obtain pain medications
> and has been using higher doses than prescribed for her.  I confronted
> the patient about this, and she indicated that she has done that in the
> past, and this is something that she has been doing recently.  Tr. 849.

Beavers now asserts that this citation does not constitute substantial evidence.  Pl.'s Opening Br. 10 (citing Gallant, 753 F.2d at 1455).  Substantial evidence is "more than a mere scintilla, but less than a preponderance."  Bray, 554 F.3d at 122 (quoting Andrews, 53 F.3d at 1039).  Stated another way, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The ALJ's citation to Dr. Rifal's chart note is consistent with this standard.  Further, this court must defer to the ALJ's interpretation of the evidence when it is based upon a reasonable

10 - FINDINGS AND RECOMMENDATION

interpretation of the record. *Edlund*, 253 F.3d at 1156; *Batson*, 359 F.3d at 1193.   Finally, Beavers'

indicated citation, discussed above, does not address the substantial evidence standard. *Gallant*, 753

F.2d at 1455.  For all of these reasons, the ALJ's citation to the August 2, 2006, chart note should

not be disturbed.

The ALJ also cited Beavers' December 2006 hospitalization record, which showed rule-out

diagnoses of narcotic and benzodiazepine abuse. Tr. 31.  The record shows that Beavers repeatedly

received these diagnoses during her December 2006 hospitalization.   Tr. 650, 656, 667, 670, 673,

691, 696, 703, 707, 716.  The record also shows that physicians also expressed ongoing concern

regarding her opiate use during this time (Tr. 654), and inpatient treatment notes show that Beavers'

treating physician, Dr. Shafer, refused to fill her OxyContin prescription because he was concerned

about the amount of pain medications she was taking. Tr. 709.  The ALJ's findings regarding

hospital physician concerns regarding her narcotic use is based upon the record and should be

affirmed.

Finally, Beavers's sixth argument asserts that the ALJ's citation to her multi-pharmacy use

was inaccurate.  Pl.'s Opening Br. 10.  She specifically argues that she was using multiple

pharmacies due to prescription costs, citing her applications for medication assistance. *Id.*  Her

indicated citation shows a series of telephone correspondences between Beavers' husband and

treating physician Dr. Green's staff regarding lost prescriptions, re-ordering prescriptions, and

alleged errors in filling prescriptions. Tr. 509, 511-19, 524, 598.  Though Beavers' husband reported

that "there was an error" in a prescription associated with an assistance program (Tr. 518) the record

does not reflect such error, and address prescription assistance.  Beavers husband submitted a form

11 - FINDINGS AND RECOMMENDATION

for financial assistance to Dr. Green's office, but the record does not show that Beavers applied for financial assistance from a pharmacy. Finally, the record shows that Beavers' husband brought unfilled prescriptions to Dr. Green's office to exchange for new prescriptions because she was obtaining OxyContin from a different pharmacy than her other prescriptions. Tr. 511. The record does not indicate why Beavers' husband made this request.

The ALJ may make "inferences reasonably drawn" from the record. *Batson*, 359 F.3d at 1193. Here, the ALJ inferred that Beavers' somewhat confusing use of multiple pharmacies, in combination with the other evidence discussed above, supported a finding that her narcotic drug use impinged her credibility. Tr. 31. The ALJ's findings on the matter should therefore be affirmed.

In summary, Beavers fails to show that the ALJ misread the record or otherwise erred regarding her narcotic medication use and abuse. The ALJ's findings on the matter should therefore be affirmed.

### 5.    Medical Record

Finally, Beavers argues that the ALJ erroneously cited "OME" in his credibility finding. Pl.'s Opening Br. 4. While an ALJ may not require that a claimant's medical record corroborate the degree of symptoms to which the claimant testifies, *Bunnell*, 947 F.3d at 345, the ALJ may address medical evidence that is inconsistent with the claimant's alleged limitations, *Smolen*, 80 F.3d at 1284, in conjunction with other credibility factors. *Robbins*, 466 F.3d at 883. Beavers acknowledges this standard, but points to no factually inaccurate citations by the ALJ. Because the ALJ cited other relevant factors in his credibility analysis, Beavers does not establish error as a matter of law in the ALJ's citation to the medical record in his credibility analysis.

12 - FINDINGS AND RECOMMENDATION

### C.    Credibility Conclusion

In summary, Beavers correctly argues that the ALJ improperly addressed her testimony regarding how long she could sit.  However, the ALJ's remaining credibility findings were based upon the record and the proper legal standards.  This court may affirm an ALJ's overall credibility conclusion while rejecting one aspect of the ALJ's analysis.  *Batson*, 359 F.3d at 1197.  For this reason, the ALJ's credibility conclusion should be sustained.

## II.    Medical Source Statements

Beavers challenges the ALJ's findings regarding a treating general practitioner, two treating psychologist, and numerous hospital staff physicians.

### A.    Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner.  20 C.F.R. § 404.1527(e)(1).  If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another.  *Id.* at 830.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

///

///

13 - FINDINGS AND RECOMMENDATION

B.    **Analysis**

1.    **Treating Physician Janette Green, M.D.**

Treating physician Dr. Green submitted a letter to the record on June 30, 2005. Tr. 280. Dr.

Green wrote that she had treated Beavers since January 2005, and that Beavers "has almost constant

pain in her lower back that limits her from any prolonged standing or walking. Even sitting for a few

minutes is very difficult. Any prolonged activity leads to progressive muscle spasms and escalating

pain." Tr. 280. Dr. Green stated that Beavers "is on several medications for this . . ." and cannot

sit for more than thirty minutes at a time. *Id.* She concluded:

> It is my opinion that Ms. Beavers [sic] chronic back pain is of a
> severity that performs her from performing even a sedentary
> occupation with continuity. Her limitations and restrictions include
> no prolonged standing, walking, sitting; no repetitive bending,
> stooping, twisting or reaching; no lifting greater than 10 pounds. The
> pain also precludes her being able to concentrate effectively to be able
> to perform administrative duties. Her anxiety and panic disorder are
> severe at this point, and preclude her being able to deal well in social
> situations, with stressors, or new environments.

*Id.*

The ALJ twice discussed Dr. Green's opinion. Tr. 29, 31. The ALJ cited Dr. Green's

statement that Beavers has depression, anxiety, and panic attacks resulting in mental limitations

"such as problems concentrating effectively to perform administrative duties." Tr. 31. The ALJ

found that "the evidence does not support that [Beavers] has problems to relate with people," and

Dr. Green's belief that Beavers' concentration impairs her ability to perform administrative tasks

"does not preclude other types of work. In consideration of Dr. Green's opinion, a limitation

consisting of simple 1-2-3-step work is adequate." *Id.*

The ALJ also cited Dr. Green's letter a second time, with the following findings:

14 - FINDINGS AND RECOMMENDATION

> Particularly, Dr. Green's letters indicate no specific findings as to "pain." About mental impairments, she only provided a general discussion of anxiety and depression. Dr. Green's opinion is given little weight. The claimant's back problems are of questionable severity, and psychological conditions are erratic. She has been hospitalized because of "holdups" and discharged shortly. As previously noted, Dr. Green's letter of June 2005 refers to problems with concentration to the extent that they limit the claimant's ability to perform administrative duties, which does not preclude other types of work. This is adequately addressed with a restriction to simple 1-2-3-step work. In consideration of the claimant's physical problems, I give a residual functional capacity to perform light work with changing positions for a few minutes every hour; and occasionally climb, balance, stoop, kneel, crouch, and crawl. There is no evidence to support further limitations.

Tr. 32.

Beavers now cites the first two lines of this analysis only, and asserts that the ALJ erroneously failed to make adequately specific findings. Pl.'s Opening Br. 16. Beavers misreads the ALJ's decision. While artless, the ALJ found Dr. Green's opinion inconsistent with the medical record regarding Beavers' back pain and psychological issues. In such circumstances the ALJ was required only to provide specific and legitimate reasons for rejecting Dr. Green's opinion. *Lester*, 81 F.3d at 830-31. The ALJ's finding that Dr. Green's opinion is unsupported because it does not specifically address the source of Beavers' pain is based upon the record; Dr. Green made no explanation for her assessment of Beavers' pain, other than to say, "It is my understanding that Ms. Beavers has had extensive work up for this back pain in the past." Tr. 280. The ALJ may reject medical source opinions that are brief, conclusory, and unsupported by clinical notes or findings. *Bayliss*, 427 F.3d at 1211. The ALJ's findings pertaining to Dr. Green's opinion and Beavers' back pain should be affirmed.

Beavers does not challenge the ALJ's findings pertaining to Dr. Green's assessment of her

15 - FINDINGS AND RECOMMENDATION

mental limitations, Pl.'s Opening Br. 15, and these findings will not now be addressed.

### 2.    Psychologist Garen Weitman, Psy. D.

Dr. Weitman performed an intake evaluation in conjunction with Beavers' care at Lifeworks NW counseling center. Tr. 494-95. Dr. Weitman noted Beavers' history of back pain, narcotic medication use, and headaches, as well her reports of childhood abuse and "some suicidal ideation" without a plan. Tr. 494. Dr. Weitman also noted that Beavers completed paperwork slowly, laid on the floor with a stuffed animal during the evaluation due to a headache, and depended upon her husband to answer several questions. Tr. 484. However, he found Beavers mentally oriented, with a low mood, anhedonia, fatigue, difficulty sleeping, irritability, and "situationally-based panic attacks when leaving her home." Tr. 495. Dr. Weitman assessed recurrent major depressive disorder and panic disorder with agoraphobia, and assessed a "current" global assessment of functioning ("GAF")[1] analysis of fifty. Tr. 495. A GAF between 41 and 50 indicates, "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *DSM*, 34.

The ALJ noted Dr. Weitman's GAF analysis, and found it "based on the claimant's history and presentation, which included slow and soft speech and depending on her husband to answer several questions," as well as reports of childhood abuse and vague suicidal ideation. Tr. 30. The ALJ also considered Dr. Weitman's GAF analysis, and concluded that "considering the overall evidence, any GAF of 50 or less is simply unsustainable." *Id.*

---

[1]The GAF scale is used to report a clinician's judgment of the patient's overall psychological, social and occupational functioning on a scale of 1 to 100. It does not include impairment in functioning due to physical or environmental limitations. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual, 4th ed., Text Rev. (2002), 34.

16 - FINDINGS AND RECOMMENDATION

Beavers now asserts that, "Without citing to any evidence in the record, the ALJ dismissed Dr. Weitman's opinion with one sentence, reading: 'Considering the overall evidence, any GAF of 50 or less is simply unsupportable.'" Pl.'s Opening Br. 17.

Beavers is again too restrictive in reading the ALJ's analysis. The ALJ cited Dr. Weitman's findings that she was mentally oriented without evidence of a thought disorder, as well as the record as a whole. Tr. 30. As noted, the ALJ may reject a medical source opinion that is unsupported by clinical notes or findings. *Bayliss*, 427 F.3d 1216. Dr. Weitman did not explain his GAF analysis. Notably, Dr. Weitman also characterized his analysis as "current." Tr. 495. This analysis is therefore insufficient to show that Beavers met the Commissioner's requirement that a disability last twelve months or longer. 20 C.F.R. § 404.1509. For all of these reasons, Beavers fails to show that the ALJ erroneously evaluated Dr. Weitman's opinion.

Finally, the court notes Beavers' assertion that the "by declaring any GAF of 50 or less unsupportable, the ALJ is impermissibly substituting his judgment for Dr. Weitman's and any doctor who treated plaintiff. This is error." Pl.'s Opening Br. 17. Beavers' indicated citation rehearses the standard articulated in *Lester*, and states that the ALJ may not substitute his judgment for that of a medical expert. *Jones v. Astrue*, 2010 WL 4875700 at *2 (citing *Winfrey v. Chater*, 92 1017, 1022 (10th Cir. 1996); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (9th Cir. 1990)).[2] It makes no application of this standard to all GAF opinions. Instead, the court subsequently found that the ALJ's rejection of an examining psychologist's GAF score was erroneous in light of the legal standards pertaining

---

[2]This statement of law is of dubious authority since, clearly, in the Ninth Circuit the ALJ may reject a medical experts opinion contradicted by a treating or examining physician. *Lester*, 81 F.3d at 830.

to conflicting medical source opinions. *Jones*, 2010 WL 4875700 at * 3. This analysis does not establish that an ALJ must accept every GAF analysis presented. Beavers' submission therefore fails.

### 3.    Psychologist Cynthia Romero, M.D.

Dr. Romero treated Beavers at "Lifeworks NW" counseling center between January 10, 2006 (Tr. 483), and December 12, 2006. Tr. 643. Dr. Romero performed an initial evaluation on January 20, 2006, and diagnosed recurrent and severe major depressive disorder, panic disorder, post-traumatic stress disorder, and a GAF of 50. Tr. 485. Notably, Dr. Romero's chart notes produced after her intake evaluation are limited to medication management and do not include ongoing diagnostic and GAF assessments pertaining to the continuing treatment period. Tr. 468, 471, 475, 541, 543, 545, 551, 554, 560. On December 12, 2006, Dr. Romero noted Beavers' report of increased depression, and stated that "she may also be withdrawing from pain medication." Tr. 463. Dr. Romero instructed Beavers to contact the emergency room, and Beavers was subsequently admitted to the hospital, as discussed above.

The ALJ cited Dr. Romero's GAF assessment of 50, and found it based "solely on the claimant's history" without psychological testing, and also noted that Beavers responded positively to treatment and counseling associated with Dr. Romero's consultation. Tr. 30-31. Beavers now argues that the ALJ improperly rejected Dr. Romero's opinion. Her assignment of error focuses upon Dr. Romero's GAF assessment. Pl.'s Opening Br. 19.

Beavers first asserts that the ALJ improperly substituted his own opinion for Dr. Romero's opinion pertaining to Dr. Romero's own GAF analysis. *Id.* (citing *Jones*, 2010 WL 4875700 at * 2).

18 - FINDINGS AND RECOMMENDATION

As discussed above, Beavers' citation does not establish such a principle.

Beavers also asserts that the *Diagnostic and Statistical Manual*, which establishes GAF criteria, does not require psychological testing for diagnoses of post-traumatic stress disorder, depression, anxiety, or in determining GAF scores. Pl.'s Opening Br. 19. This assertions is correct, but again reads the ALJ's decision too narrowly. The ALJ first found that Dr. Romero's GAF was based upon Beavers' reported history. Tr. 31. The ALJ may reject physician opinions predicated upon reports of a claimant properly found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ's rejection of Dr. Romero's opinion, to the extent it was based upon Beavers' reporting, should therefore be affirmed. Finally, as noted, the ALJ may reject opinions that are unsupported by clinical notes or findings. *Bayliss*, 427 F.3d at 1216. The ALJ's inference that Dr. Romero did not provide adequate clinical data to support his GAF analysis should therefore be affirmed.

Beavers then asserts that "it is extremely unlikely" that Dr. Romero accepted Beavers' unspecified "description without applying her own judgment and training in evaluating Plaintiff's functioning level." Pl.'s Opening Br. 19. The difficulty here is that Dr. Romero did not explain her reasoning. As noted, the ALJ may reject a physician opinion unsupported by clinical notes and findings. *Bayliss*, 427 F.3d at 1216. Because Dr. Romero did not explain her GAF assessment, and made no GAF assessments in her longitudinal treatment notes, the ALJ was entitled to reject Dr. Romero's January 10, 2006, GAF analysis. This reasoning should be affirmed.

Finally, Beavers asserts, without explanation, that "LifeWorks" treatment notes "strongly support Dr. Romero's assessment" and do not undermine it. Pl.'s Opening Br. 19. The ALJ found

that Beavers responded positively to counseling and medication received at LifeWorks, but made no explicit finding regarding this treatment and Dr. Romero's opinion. Tr. 31. LifeWorks treatment notes show that Beavers and her husband reported she was "doing better" (Tr. 465), "was looking and sounding much brighter today" (Tr. 466), and, generally, appeared improved. Tr. 562. These notes also show that Beavers appeared depressed and angry at times. Tr. 469, 474, 542, 544. The LifeWorks treatment notes do not contain GAF analyses or diagnostic conclusions pertaining to Dr. Romero's opinion. Beavers therefore fails to establish that the ALJ erroneously relied upon these treatment notes in rejecting Dr. Romero's opinion.

### 4.    Hospital Staff Physicians

Finally, Beavers argues that the ALJ selectively assessed the opinion of numerous hospital staff physicians who participated in her inpatient treatment, including Paul Geiger, M.D., Bowen Parsons, M.D., Clarissa Rose, M.D., and Jonathan Birnkrant, M.D. Pl.'s Opening Br. 20-21.

Each of these physicians treated Beavers during her 2006 hospitalizations. The ALJ discussed Beavers' hospitalization episodes in some detail. Tr. 26, 30-31. No authority suggests the ALJ must discuss each attending physician by name. Beavers describes their immediate diagnostic impressions of depression and anxiety, but does not explain the manner in which their opinions establish that she remained impaired for the requisite durational period. Further, Beavers makes no attempt to correlate the diagnostic impressions with functional limitations necessary to establish disability. The ALJ accepted Beavers' depression and anxiety as severe impairments. Tr. 25. Beavers therefore fails to establish error in the ALJ's treatment of individual attending physicians.

///

20 - FINDINGS AND RECOMMENDATION

C.      **Conclusion: Medical Source Statements**

In summary, the ALJ's findings regarding the medical evidence discussed above is based upon the record and the appropriate legal standards. These findings should be affirmed.

III.    **The ALJ's Step Five Findings**

Finally, Beavers argues that the ALJ should have found her disabled at step five in the sequential proceedings. Pl.'s Opening Br. 22.

A.      **Step Five Standards**

At step five in the sequential proceedings, the ALJ determines if the claimant can perform work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). Here the ALJ may take administrative notice of the occupational data contained in the *Dictionary of Occupational Titles*, or draw upon a vocational expert's testimony to show that a claimant can perform work in the national economy. 20 C.F.R. § 404.1566(d-e). The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

B.      **Analysis**

Beavers asserts that the ALJ's questions to the vocational expert failed to include the limitations expressed in the ALJ's opinion. Specifically, she points to the ALJ's finding that Beavers had "moderate" limitations in concentration, persistence, and pace, and was limited to "simple" 1-2-3 step work. Pl.'s Opening Br. 22. She asserts that the ALJ failed to include findings regarding concentration, persistence, and pace in his questions to the vocational expert, and that, further, as a matter of law, "simple" work does not include limitations in concentration, persistence, and pace. *Id.* The Commissioner does not address this argument, asserting only that because Beavers does not

21 - FINDINGS AND RECOMMENDATION

show error in the evidence discussed above, she does not show error at step five. Def.'s Br. 10.

The ALJ assessed "moderate difficulties" in Beavers' concentration, persistence, and pace (Tr. 27), and asked the vocational expert to consider an individual limited to "simple, one, two, three step work." Tr. 975. Though this court has found that a restriction to "simple" tasks, without further explanation by the ALJ, does not adequately capture a "moderate" limitation in concentration, persistence, and pace, *Berjettej v. Astrue*, 2010 WL 3056799 at * 7-8 (D. Or. July 30, 2010), the Ninth Circuit has previously determined a restriction to "simple" tasks is consistent with a "moderate" limitation in concentration, persistence, and pace if supported by the medical evidence. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008); *see also Cox v. Astrue*, 2011 WL 6122954 at *9 (D. Or. Oct. 26, 2011)). Beavers presently makes no showing that the medical evidence does not support the ALJ's findings regarding her "moderate" limitations. In such circumstances, the ALJ may ask a vocational expert to consider "simple" work. *Id.* Therefore, Beavers fails to establish error.

## CONCLUSION AND RECOMMENDATION

The Commissioner's evaluation of Beavers' testimony and the medical evidence is based upon the record and the proper legal standards, except as noted, and therefore should be affirmed. Therefore, the Commissioner's final decision should be AFFIRMED.

## SCHEDULING ORDER

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

22 - FINDINGS AND RECOMMENDATION

The Report and Recommendation will be referred to a district judge.   *Objections to this Report and Recommendation, if any, are due by February 7, 2012.   If objections are filed, any response to the objections are due by February 24, 2012, see* Federal Rules of Civil Procedure 72 and 6.

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

IT IS SO ORDERED.

DATED this ___20___ day of January, 2012.

Mark D. Clarke
United States Magistrate Judge

23 - FINDINGS AND RECOMMENDATION